737 So.2d 182 (1999)
Jeffrey W. ROACH, Plaintiff-Appellee,
v.
EAGLE WATER, INC. and Louisiana Workers' Compensation Corporation, Defendants-Appellants.
No. 31,912-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*183 Egan, Johnson & Stiltner by Thomas D. Travis, Baton Rouge, Counsel for Defendants-Appellants.
James E. Franklin, Jr., Shreveport, Counsel for Plaintiff-Appellee.
Before NORRIS, BROWN and DREW, JJ.
DREW, J.
Eagle Water, Inc. and Louisiana Workers' Compensation Corporation ("LWCC") appeal a judgment ordering them to authorize and to pay for a second MRI of Jeffrey Roach's cervical spine and to pay $2,000 in penalties and $2,500 in attorney fees. Roach answers the appeal seeking additional attorney fees for work performed in responding to the appeal. The Workers' Compensation Judge ("WCJ") found that while appellants reasonably controverted Roach's claim for the second MRI, they failed to comply with the Utilization Review ("UR") rules. We agree with the WCJ that Roach was entitled to the second MRI. However, because we do not find authority for an award of any attorney fees or a penalty above $500 due to violation of the pertinent UR rules, we modify the judgment to delete the award of attorney fees and reduce the penalty assessed against appellants to $500. As modified, the judgment is affirmed.

FACTS
Jeffrey Roach is employed by Eagle Water, Inc, which is owned by his sister, Joyce Knight. Roach's job with Eagle Water involves numerous physical tasks, including fixing leaks, installing and reading meters, digging, laying pipes and taking chemical readings. Knight testified that she believes her brother should be allowed to have the second MRI.
Roach was injured on February 7, 1997, when the company truck in which he was riding as a passenger was involved in a head-on collision with another vehicle. Roach was thrown forward on impact and hit his head against the truck's windshield. He was taken to an emergency room, treated, then released. X-rays taken that day showed no fractures or dislocations of the cervical spine.
On February 10, 1997, Roach began treatment with Dr. Austin Gleason, an orthopedic surgeon. Roach complained of pain in both the left and right paraspinal muscle groups at the base of his neck, with pain radiating out into his left shoulder. Physical examination revealed that the range of motion for Roach's cervical spine was limited to 50-60% of normal.
Dr. Gleason referred Roach to Dr. Marco Ramos, a neurosurgeon, who evaluated Roach on February 17, 1997. Fearful that Roach had traumatic injury to his cervical spine, Dr. Ramos requested an MRI of the cervical spine in order to rule out the possibility of radiculopathy, secondary to herniated pulposus, or a similar pathology. LWCC approved this MRI on February 20, 1997. The MRI of Roach's cervical spine, run on February 25, 1997, by Dr. J.M. Alba, was unremarkable. No significant spondylotic changes, disc herniation or spinal stenosis was seen. Roach described having headaches, neck pain, difficulty *184 turning his neck and numbness in his right hand and arm at the time this MRI was taken. He testified that the numbness and neck pain did not improve.
A progress report dated March 10, 1997, relates that Dr. Gleason found Roach to be markedly improved, with the range of motion in his neck having increased to 80% of normal. Dr. Gleason released Roach to return to work on a light-duty basis. Dr. Gleason discontinued physical therapy on April 1, 1997. Dr. Gleason discharged Roach on May 14, 1997, to return only when needed.
Filed into the record is a July 21, 1997 letter from Dr. Gleason to Roach's attorney. Dr. Gleason wrote that it was his impression that Roach seemed to have recovered completely from the soft-tissue injury to his neck and shoulder. Dr. Gleason further wrote that Roach needed to be reevaluated completely if he had continued symptoms. Roach returned to Dr. Gleason on August 6, 1997. A progress report from that visit shows Roach complained that his neck pain had grown progressively worse since his last examination. Roach was released from therapy on September 24, 1997, but was ordered to engage in a home exercise program. A progress report from an October 29, 1997 visit states that Roach complained to Dr. Gleason that he continued to have neck pain, especially when tilting or twisting his head to the right or when looking up while squirrel hunting. Dr. Gleason scheduled Roach for a repeat MRI of the cervical spine in order to rule out cervical disc pathology. On November 5, 1997, Professional Healthcare Services, Inc. informed Roach that the second MRI of his cervical spine would not be approved. This denial was not appealed.
Orthopedic Surgeon Dr. George Byram is employed as a medical director for LWCC. He denied the second MRI because the previous MRI was normal, the physical examinations showed no evidence of any neurological problems, and Dr. Ramos did not find any neurological problems. Dr. Byram did not believe a second MRI was necessary in the absence of any physical findings suggesting nerve impingement problems. He believed Roach simply had generalized pain not related to any particular nerve root.
Roach filed a disputed claim for compensation (LDOL-WC-1008) on December 9, 1997. Roach alleged that LWCC arbitrarily and capriciously refused to provide the second MRI of his cervical spine. When LWCC received the 1008 form, the claims representative sent it to LWCC's pre-certification company, Professional Healthcare Services, Inc. ("PHC") for review. The repeat request of the second MRI was not denied until January 9, 1998.
The WCJ found in favor of Roach, ordering LWCC and Eagle Water to authorize and pay for the second MRI of Roach's cervical spine. The WCJ also assessed a $2,000 penalty and awarded $2,500 in attorney fees against LWCC and Eagle Water for violation of the "Utilization Review time, procedures and processes."

DISCUSSION

Medical Necessity of the Second MRI:
Appellants argue in their first assignment of error that the WCJ was clearly wrong in finding the repeat MRI of Roach's cervical spine to be reasonable and medically necessary. The factual findings of the WCJ are entitled to great discretion and will be reversed only upon a showing of manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Smalley v. Integrity, Inc., 31-247 (La.App.2d Cir.12/9/98), 722 So.2d 332.
An employer is obligated to furnish all necessary medical treatment related to a work injury. La. R.S. 23:1203; Nowlin v. Breck Const. Co, 30-622 (La.App.2d Cir.6/24/98), 715 So.2d 112.
Nora Washington, a claims adjuster for LWCC, explained that her supervisor received a Notice of Mediation Conference *185 on December 18, 1997, requested the 1008, then received a copy of the 1008 on December 24, 1997. Washington was on vacation at this time, returning to her office on January 6, 1998. Despite receiving the 1008, Washington's supervisor did not do anything with it while Washington was on vacation. Dr. Gleason also sent a progress report repeating his request for a second MRI to LWCC on December 9, 1997. Washington found a copy of this report date-stamped as received on December 18, 1997. This report states that Roach continued to have neck pain and that Dr. Gleason's recommendation remained an MRI of the cervical spine to rule out cervical disc pathology.
Washington sent the 1008 form back through the Utilization Review process to have the MRI request reviewed again. Washington testified that she treated the 1008 as a UR appeal, therefore she sent it to PHC for review, which took place on January 9, 1998. She further explained that when there is a denial of a UR appeal, the precertification company will send the request to the Office of Workers' Compensation ("OWC") for the appointment of an independent medical examination physician.
Roach was referred to orthopedic surgeon Dr. J.E. Smith for an independent medical examination. Dr. Smith issued his report on February 4, 1998. Dr. Smith's diagnosis was post masculoligamentous strain of the cervical spine and contusion of the skull. Dr. Smith noted that Roach had a full range of motion for his cervical spine. Dr. Smith opined that Roach had injured one or more facet joints in his neck, and that "there is nothing of any substantial benefit to be performed surgically that would alter this situation." Dr. Smith thought that Roach's headaches were probably caused by an injury to his head. He suggested further examination by a neurologist. There is an addendum to Dr. Smith's report, also dated February 4, 1998, in which Dr. Smith only states that he does not think Roach needs another MRI of his cervical spine.
A letter from OWC was sent on March 4, 1998 to the parties. This letter reiterates the contents of Dr. Smith's report and states that a repeat MRI is not recommended. Attorneys for both parties told the WCJ that neither one submitted anything to OWC, so the only information OWC may have had was what PHC sent them, but nonetheless, no one was sure what information OWC had when issuing this letter.
Dr. Smith referred Roach to Dr. Benjamin Nguyen, a neurologist. Dr. Nguyen issued his report on March 30, 1998. Among Dr. Nguyen's impressions was that Roach's complaints of persistent neck pain and numbness in his right hand raised the possibility of radiculopathy. Therefore, he recommended an EMG/NCV study to rule out this possibility. Dr. Nguyen noted that if the EMG/NCV test came back abnormal, he would consider a repeat MRI of the cervical spine. If the EMG/NCV test was normal, he would "hold off MRI of the cervical spine." An EMG/NCV test was performed on April 2, 1998. The results were unremarkable with no electrophysiological evidence of neuropathy or radiculopathy.
LWCC sent Roach to neurosurgeon Dr. David Cavanaugh for examination. His report is dated April 23, 1998. Dr. Cavanaugh's diagnosis was cervical strain secondary to the accident. Dr. Cavanaugh answered questions in his report, but neither the text nor the nature of the questions he answered was provided. Dr. Cavanaugh did not opine about whether the repeat MRI was necessary, but only stated that he felt that Roach had reached maximum medical recovery and that no surgical problems were found.
The WCJ gave great weight to the opinion of Dr. Gleason, Roach's treating physician. The WCJ recognized that the report of an independent medical examiner is given prima facie weight. See La. R.S. 23:1123. However, the WCJ declined to *186 give Dr. Smith's report this weight. The WCJ explained that she had not been provided with a copy of the OWC file sent to Dr. Smith. Thus, she was unable to know how accurate and complete the records were that were made available to Dr. Smith. The WCJ also felt the process by which Dr. Smith reached his decision should have been set forth more clearly. The WCJ noted that Dr. Smith did not state he reviewed the reports from Dr. Gleason and Dr. Ramos. The WCJ wondered whether Dr. Smith viewed the actual MRI films or simply looked at the MRI report. The WCJ was also perplexed by Dr. Smith listing only LWCC, and not Roach or Dr. Gleason, as a "cc" on his report. Finally, the WCJ was concerned that the very issue that needed to be addressed, whether Roach should have the second MRI, was addressed in an addendum and not in the original report.
Dr. Cavanaugh did not directly address the necessity of a second MRI in his report. Counsel for appellants admitted at the hearing that Dr. Cavanaugh did not say that he does not recommend the second MRI. Dr. Cavanaugh simply stated that he felt that Roach's previous treatment had been appropriate and that Roach had reached maximum medical recovery for his cervical strain. In making these statements, Dr. Cavanaugh was answering questions apparently provided in a letter. However, it is unknown exactly what these questions were. The WCJ commented that she would have found against ordering the MRI if Dr. Cavanaugh had been more specific.
Dr. Nguyen recommended an EMG/ NCV study to rule out possible radiculopathy. The results were normal. The WCJ wished to know how close to normal Roach was. Dr. Nguyen stated that if these tests were normal, he would "hold off MRI of the cervical spine." The WCJ correctly noted that Dr. Nguyen did not state that the MRI should never be done, only that it should be held off. How long the MRI should be held off was not explained in the report.
On this record, we cannot find that the WCJ was clearly wrong in ordering LWCC and Eagle Water to authorize and pay for the second MRI of Roach's cervical spine.

Penalty and Attorney Fees:
The WCJ assessed a $2,000 penalty and $2,500 in attorney fees for, as she stated during the hearing, "violations of Utilization Review time, procedures, and processes." A WCJ has great discretion in awarding or denying penalties and attorney fees. Nowlin v. Breck Const. Co., supra.
Appellants argue in their second error assignment that the trial court erred in awarding attorney fees and penalties, or alternatively, a penalty in excess of $500. Appellee concedes in his brief to this court that "[i]t is unclear which section the [WCJ] was relying on" when assessing attorney fees and a penalty. Appellee contends that La. R.S. 23:1201 is "broad enough to authorize the action taken by the [WCJ] in assessing penalties and attorney fees."
La. R.S. 23:1201(F) provides for assessment of a penalty and attorney fees for the failure to furnish medical benefits. However, these sanctions do not apply if the claim is reasonably controverted. Appellee concedes in his brief that the WCJ found that LWCC and Eagle Water had reasonably controverted the request for the second MRI. The WCJ commented that the case was a close one, even stating that if Dr. Cavanaugh "had given anything specific, I would have found against it." The WCJ further stated:
I'm not saying that it wasn't reasonable to controvert the expense of a second MRI. I do think that was a legitimate defense in this case. What I think though is that that doesn't excuse all of the [Utilization Review] rules. They're separate and apart from each other.

*187 The U.R. rules establish the framework for which you function to get approval or nonapproval of medical care.... If U.R. is violated, it's prima facie untimely and late and not reasonable. The claim itself was controverted and probably more so than reasonably, and I said that, it was a close case. But the procedure used was unreasonable. It was way too late and it was not in accordance with all of our established procedures.
$2,000 penalty, $2,500 attorney fee, for the very reasons stated; violations of Utilization Review time, procedures, and processes....
The WCJ clearly assessed the penalty and attorney fees for violation of the Utilization Review ("UR") rules. Pursuant to La. R.S. 23:1291, the director of the Office of Worker's Compensation ("OWC") is empowered:
* * *
(10) To require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed ... medical or surgical treatment ... and to resolve disputes over the necessity, advisability, and cost of same.
* * *
(13) To promulgate necessary rules and regulations in accordance with the provisions of the Administrative Procedure Act, imposing reasonable fines or penalties for a failure to comply with any rule or regulation adopted under the provisions of this Chapter. In no event shall such fine or penalty exceed five hundred dollars.
* * *
Our emphasis.
Apparently the WCJ found that appellants violated Utilization Review rule 2715 [LAC 40:I2715], which states in part:
A. Purpose
It is the purpose of this section to facilitate the management of medical care delivery, and to assure an orderly and timely process in the resolution of care-related disputes.
B. Statutory Limits
1. Non-Emergency Care
In addition to all other Utilization Review rules and procedures, the law (La. R.S. 23:1142) establishes a monetary limit for non-emergency medical care. The statute further provides significant penalties for a Carrier's/Self-Insured Employer's arbitrary and capricious refusal to approve necessary care beyond that limit.
* * *
The Carrier/Self-Insured Employer shall notify all parties of the request, and of their action on the request, within 5 calendar days of date of receipt of the request. Failure to respond timely may result in assessment of penalties by the hearing officer.
* * *
LWCC obviously did not comply with the five-day response period, as the progress report and Notice of Mediation Conference were received on December 18, 1997, and the 1008 form was received on December 24, 1997, yet the second request was not denied until January 9, 1998. However, we note that this rule does not provide for attorney fees for noncompliance with the five-day response period, instead only allowing the assessment of a penalty.
Any monetary limit on a penalty for noncompliance with the five-day response period is not provided in LAC 40:12715. Appellants direct our attention to LAC 40:1109, which sets a maximum penalty of $500 for the failure to comply with any rule or regulation. We also note that La. R.S. 23:1291 A(13) provides a maximum penalty of $500 for the failure to comply *188 with any rule or regulation. The $2,000 penalty assessed by the WCJ is in excess of the maximum penalty allowed by law. Accordingly, we reduce the penalty to the maximum permissible amount, $500.
Appellee states in brief that the WCJ found that the violation of the Utilization Review rules constituted "arbitrary and capricious conduct" by appellants. We disagree. The WCJ never stated that appellants were arbitrary and capricious in their conduct. In fact, the WCJ only used the phrase "arbitrary and capricious" twice during the hearing, never explicitly saying that appellants acted in an arbitrary or capricious manner.
The WCJ first stated:
As usual, we end up in the time deadlines of U.R. and whether or not those rules have been complied with. Because the rules themselves state that if you don't comply, then it's deemed arbitrary, capricious and unreasonable which is our old language.
This statement about the Utilization Review rules is incorrect. Violation of the time deadlines in the UR rules applicable to this case is not per se arbitrary and capricious. The WCJ is obviously confused about LAC 40:12715, which provides that if the claimant fails to submit certain information, then "any denial of further non-emergency care by the Carrier/Self-Insured Employer is prima facie not arbitrary and capricious."
The WCJ next used the phrase "arbitrary and capricious" when she stated, "I know in 2701 it says that you get 60 days or penalties and attorney's fees to pay a bill. And then I know the other section that says it's deemed arbitrary, capricious and unreasonable." The WCJ's reference to the "other section" is unclear. Moreover, the WCJ still did not state that she found appellants' actions to be arbitrary and capricious.
Compare Ward v. Phoenix Operating Company, 31,656 (La.App.2d Cir. 2/24/99), 729 So.2d 109. In that case, Ward's physician requested a CAT scan and an EEG procedure. LWCC forwarded the request to PHC, but never told Ward his request was being reviewed by PHC, instead telling him it was denied. PHC suggested a second medical opinion. The second physician recommended the CAT scan and the EEG, and PHC approved the request. Ward learned his request had been approved 86 days after his initial request was made. The court found that LWCC had violated La. R.S. 23:1201. Using La. R.S. 1201(F)(2) as a guide, the WCJ assessed $1,300 in penalties for LWCC's arbitrary and capricious actions in unreasonably delaying the medical procedure for 26 days. We note that this court stated:
Clearly, if penalties and attorney fees are not available for the employer's arbitrary and capricious failure to timely provide the medical benefits recommended for the claimant's treatment, then an employer may take advantage of the utilization review to stall approval or deny the procedures indefinitely. To avoid this arbitrary and capricious behavior and to eliminate confusion regarding which time period applies, penalties and attorney fees can be awarded pursuant to La. R.S. 23:1201(F). Clifton v. Rapides Regional Medical Center, 96-509 (La.App. 3rd Cir.10/9/96), 689 So.2d 471.
Our emphasis.
This language suggests that violation of the utilization review rules alone does not support the imposition of attorney fees. An independent basis for attorney fees, such as that provided in La. R.S. 23:1201, must be available.
We distinguish Clifton v. Rapides Regional Medical Center, supra, where one issue addressed was whether attorney fees could be awarded for the failure to timely initiate and complete utilization review. The court concluded that the claimant was being denied "medical services" [La. R.S. 23:1203] because utilization review was not conducted in a timely manner, having taken at least 18 months to conduct. In *189 affirming an award of attorney fees for arbitrary and capricious behavior, the court did not state under what statute the attorney fees were authorized. However, we note that the court cited verbatim the WCJ's reasons for judgment, in which the WCJ concluded that the claimant had been denied a benefit because of the delay in utilization review and offered La. R.S. 23:1201 and 1201.2 as a basis for attorney fees.
The WCJ may have found the procedure to be unreasonable, but she never stated that she found appellants' actions to be arbitrary and capricious. Moreover, the WCJ never stated that appellants had violated the provisions of a statute in addition to violating a UR rule.
Even if we were to assume the WCJ found the appellants to be arbitrary and capricious, this would have been only in the delay of the denial, not in the denial itself.[1] We have already established that sanctions under La. R.S. 23:1201 do not apply here because the claim was reasonably controverted. La. R.S. 23:1201.2, as amended, allows attorney fees when payment of claims is discontinued and the discontinuance is arbitrary, capricious or without probable cause. However, this statute does not apply in this case since the failure to authorize a procedure is recognized as the failure to furnish benefits. La. R.S. 23:1201; Nowlin v. Breck Const. Co., supra. We now turn our attention to La. R.S. 23:1142, which is in fact cited in UR rule 2715. This statute allows attorney fees when the payor withholds consent for nonemergency diagnostic testing, and the withholding is deemed to be arbitrary and capricious or without probable cause. However, as we noted earlier, the WCJ found that the appellants were unreasonable only in the timing of their denial, not in the denial itself.
Because there is no independent legal basis for awarding attorney fees for the simple violation of the five-day response period set forth in LAC 40:12715, we delete the award of attorney fees. We also reduce the penalty to $500, the maximum allowed under these circumstances.

Due Process:
In their third assignment of error, appellants argue that the WCJ violated due process when she found a violation of the Utilization Review procedures and assessed a penalty and attorney fees. This issue was not raised at trial and is being raised for the first time on this appeal. A constitutional issue may not be raised for the first time on appeal. Autrey v. Energy Corp. of America, Inc., 594 So.2d 1354 (La.App. 3rd Cir.1992), writ denied, 596 So.2d 197 (La.1992). Therefore, we do not consider this assignment of error.

DECREE
The judgment is modified to delete the award of attorney fees and to reduce the penalty to $500. As modified, and at appellants' cost, the judgment is AFFIRMED.
NOTES
[1] Unreasonably controverting a claim requires action of a less egregious nature than that required for arbitrary and capricious behavior. Brown v. Texas-La Cartage, Inc., 981063 (La.12/1/98), 721 So.2d 885. If a claim is reasonably controverted, it cannot be arbitrary and capricious.