754 So.2d 1101 (1999)
Marcellus GAY, Plaintiff-Appellee,
v.
GEORGIA PACIFIC CORPORATION, Defendant-Appellant.
No. 32,653-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1999.
*1102 Jack M. Bailey, Jr., By Jack M Bailey, J. Allen Cooper, Jr., J. Chris Miciotto, Shreveport, Counsel for Plaintiff-Appellee.
Juge, Napolitano, Guilbeau & Ruli, By Denis Paul Juge, Frank R. Whiteley, Metairie, Counsel for Defendant-Appellant.
Before NORRIS, C.J., and WILLIAMS and DREW, JJ.
NORRIS, Chief Judge.
In this workers' compensation case, the employer, Georgia Pacific Corporation, appeals from a judgment awarding the claimant *1103 penalties and attorney's fees because the employer denied the claimant's request for an MRI. We affirm.

Background
On December 2, 1992, Marcellus Gay injured his back while working for Georgia Pacific. He subsequently had two surgeries on his back. The more recent surgery was performed by Dr. Jorge Martinez on February 15, 1994.
On March 18, 1998, Gay returned to Dr. Martinez with complaints of back pain. Gay described the pain as sharp and accompanied by a "popping sensation" with radiation to his legs which suddenly appeared one morning as he awoke. The pain was aggravated by every-day activities such as standing, walking, sitting or bending. After examining Gay, Dr. Martinez recommended that he undergo a lumbosacral spine MRI to investigate his complaints.
Gay submitted a request to his employer to approve the MRI. As indicated in the record, despite repeated requests for authorization, Georgia Pacific did not request a Utilization Review from Encompass Health Management Systems, Georgia Pacific's claims manager until July 13, 1998. The record contains a file note from Dr. Martinez stating that on July 15, 1998, he discussed Mr. Gay's condition on the telephone with Dr. Levy and Dr. Oskar Friedlieb, Encompass' physician advisor. Dr. Martinez noted that he informed these doctors that Gay might have a midline ruptured disc and that the MRI was needed to rule out this diagnosis. On July 16, 1998, Encompass recommended against approving the MRI, opining that Gay had reached MMI and that since he was neurologically intact, he did not present as a surgical candidate, thus obviating the need for an MRI. The Encompass physician never examined the claimant, and the record does not contain any medical notes or reports made by the Encompass physician other than his naked conclusion that an MRI was not warranted.
On August 6, 1998, Gay filed the instant disputed claim for compensation (LDOLWC-1008) seeking approval of the MRI and statutory penalties and attorney fees. The WCJ agreed to decide Gay's MRI request on an expedited basis, and reserved the penalties and fees for a later date. On September 8, 1998, the WCJ ordered Georgia Pacific to pay for the MRI, stating:
The Court does not find that the opinion of the employer's utilization review physician is sufficient to outweigh what appears to be the reasonable judgment of the employee's treating physician regarding a necessary course of medical treatment, particularly in view of the fact that there is no evidence that the employee has been examined by the utilization review physician.
In accordance with the WCJ's order, Georgia Pacific approved Gay's MRI. On December 17, 1998, the WCJ rendered judgment on the penalties and attorney fees issue, concluding that Georgia Pacific was arbitrary and capricious in withholding approval of the MRI, and awarded Gay $2,000 in statutory penalties and $1,750 in attorney fees. In written reasons for judgment, the WCJ stated:
The Court finds that the defendant's action in refusing to authorize an MRI was under these circumstances arbitrary, cap[ri]cious and without probable cause and the claim was not reasonably controverted. The defendant's delay in seeking utilization review until some four months after the plaintiffs treating physician's recommendation of the MRI was particularly inexcusable. Further, the medical treatment requested was for a rather standard and simple diagnostic test, namely an MRI. Dr. Martinez was limited in his ability to treat his patient by the defendant insurer's delay in seeking utilization review and its reliance upon a report from a utilization review physician who simply concluded that Mr. Gay was, quote, neurologically intact, end quote.
*1104 Georgia Pacific appeals the award of penalties and fees.

Discussion Applicability of Current Law
By its first assignment of error, Georgia Pacific argues that the law in effect at the time of Gay's accident governs the award of penalties and attorney fees. This is significant because the pre-1993 version of La R.S. 23:1201 would be more favorable to the employer. Gay, on the other hand, argues that the provisions in effect when his employer refused to authorize the MRI should control.
In the case of an injury compensable under the Louisiana Workers Compensation Act, the employer is obligated to furnish necessary medical and surgical treatment. La. R.S. 23:1203 A; Nowlin v. Breck Construction Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112; Spencer v. Gaylord Container Corp., 96 1230 (La. App. 1st Cir.3/27/97), 693 So.2d 818.
An employer's failure to authorize a medical procedure for an employee otherwise eligible to receive worker's compensation is deemed to be the failure to furnish compensation benefits, thereby triggering the penalty provisions of the Louisiana Worker's Compensation Act. Roach v. Eagle Water, 31,912 (La.App.2d Cir. 5/5/99), 737 So.2d 182, 189; Fisher v. Lincoln Timber Co., 31,430 (La.App.2d Cir.1/24/99), 730 So.2d 973; Ward v. Phoenix Operating Company, 31,656 (La. App.2d Cir.2/24/99), 729 So.2d 109. Awards for penalties and attorney fees are governed by La.R.S. 23:1201 and 1201.2.
On December 2, 1992, the date of Gay's accident, there was no statutory penalty for the failure to pay or authorize medical expenses; only the withholding of compensation subjected an employer to a statutory penalty. The former La. R.S. 23:1201 provided, inter alia:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections B, C, or D of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
Act 1003 of 1992, effective January 1, 1993, amended section 1201 to provide expressly that "medical benefits" are included within the protection afforded by the imposition of such penalty to which was added an award of attorney fees:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
. . .
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Under this current law, if an employer fails to pay medical benefits, a penalty and *1105 reasonable attorney fees may be assessed unless the claim is reasonably controverted or if the nonpayment results from conditions over which the employer had no control. La. R.S. 23:1201 F(2); Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885; Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140.[1]
Typically, the law at the time of a claimant's work related injury governs because it establishes the rights and duties of the parties with regard to entitlement to compensation benefits. Bruno v. Harbert International Inc., 593 So.2d 357 (La. 1992). This court has in the past expanded this general rule, without discussion, and applied the penalty and attorney fee provisions in effect at the time of an accident to subsequent failures to pay compensation. Beddes v. Qwik Pantry, 29, 657 (La.App.2d Cir.6/18/97), 697 So.2d 695, 698; Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App.2d Cir.5/4/94), 637 So.2d 672, 677, writ denied, 94-1491 (La.9/23/94), 642 So.2d 1295.
We have, however, recently also stated, albeit in dicta, that the provisions for statutory penalties and attorney fees in effect at the time of the allegedly wrongful conduct should control. Berry v. Insurance Co. of North America, 28,580 (La.App.2d Cir.10/30/96), 683 So.2d 310, 312, writ denied, 97-0091 (La.3/7/97), 689 So.2d 1374.
In the present case, Georgia Pacific refused to authorize the MRI over five years after the amendment took effect and nearly six years after Gay's injury. In fact, the amendment took effect 29 days after Gay's accident. With the question squarely presented as such, we hold that under these circumstances, the provisions in effect at the time of the withholding of benefits control the award of penalties and attorney fees. Although medical benefits are triggered by an injury, the procedures for delivering those benefits are subject to change. When conduct occurs that merits penalties or attorney fees under current compensation law, it is of no consequence that those penalties or fees were not available at the time of the accident since the conduct occurred after the statute became law. This is because an award of penalties or fees does not govern or modify an employee's substantive right to compensation based on his injury, but rather these awards punish the employer for failing to provide that compensation. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, 1386; McCoy v. KMB Transport, Inc., 98-1018 (La. App.1st Cir. 5/14/99), 734 So.2d 886. To conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker "whole" but rather to discourage specific conduct on the part of the employer. Sharbono, supra.
This is analogous to the termination of benefits for false representations pursuant to La.R.S. 23:1208. The making of the statement, not the occurrence of the injury, determines the law governing the effect of the statement. See Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7, fn. 1; Smalley v. Integrity, Inc., 31,247 (La.App.2d Cir. 12/8/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782. Likewise, the first circuit has recently held that the penalty provisions of La.R.S. 23:1201 G in effect at the time of an employer's deleterious conduct applies even when the incident from which the claim arose occurred before the statute created such a remedy. McCoy v. KMB Transport, Inc., 98 1018 *1106 (La.App. 1st Cir. 5/14/99), 734 So.2d 886. Accordingly, this assignment of error has no merit.

Penalties under La.R.S. 23:1201
Having decided that the current version of La. R.S. 23:1201 governs this dispute, we turn to Georgia Pacific's claim that it reasonably controverted the need for an MRI. To determine whether a claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885; Odom, supra. Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by the claimant. Briscoe v. Thero-Kinetics, Inc., 31,890 (La.App.2d Cir. 5/5/99), 737 So.2d 177; Douglas v. Kitchen Brothers Manufacturing, 30,637 (La.App.2d Cir.06/24/98), 715 So.2d 663; Cleveland v. Delhi Guest Home, 29,506 (La.App.2d Cir.5/7/97), 694 So.2d 607.
The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees and her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706; Odom, supra; Harrison v. Frank & Janie Seafood Restaurant, 30,845 (La. App.2d Cir.8/19/98), 718 So.2d 1003; Davis v. Jones Baldwin Music Co., 27,545 (La. App.2d Cir.11/01/95), 662 So.2d 803. As such, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; to reverse the WCJ's findings of fact, the reviewing court must conclude that a reasonable factual basis for that finding does not exist in the record. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
On March 18, 1998, Dr. Martinez recommended that Gay have an MRI of his back to better determine the cause of his recurrent pain. Nearly four months later, after Georgia Pacific still had not fulfilled the request, Dr. Martinez explained to their claims manager that the MRI could rule out a ruptured disc and facilitate a future course of treatment. The Encompass report merely repeats the opinion of its physician advisor that Gay "does not present as a surgical candidate." Notably, however, the record contains no evidence supporting that conclusion. Further, the record does not indicate that the Encompass physician even examined Gay, and there are no notes giving specific reasons why that physician disagreed with Dr. Martinez' belief that the MRI was necessary. Although such an examination may not be required under the utilization review rules, the denial of an MRI, a basic diagnostic tool, is unjustified, particularly when an IME was never requested. With nothing but this conclusory report to rebut Dr. Martinez' opinion, the WCJ was not clearly wrong in finding that the employer did not reasonably controvert Gay's need for the MRI. Because the award was made for the employer's failure to provide the MRI and not merely for unwarranted delay in utilization review, the remedies provided by Section 1201 were proper. Roach, supra.
We likewise reject Georgia Pacific's argument that the denial of an MRI is analogous to the denial of a change in physician. The penalty statute at issue in Smetak v. LWCC, 97-1497 (La.App. 3d Cir.4/15/98), 711 So.2d 417, cited by appellant, was La. R.S. 23:1121. In Smetak, the appellate court reversed the imposition of penalties for the employer's failure to consent to a change in physician. The subject matter and language of La. R.S. 23:1121 is substantially different from the statute in question in this case and that statute embodies *1107 the "arbitrary and capricious, or without probable cause" standard, quite different from the "reasonably controverted" standard in La. R.S. 23:1201 F(2).

Conclusion
For the reasons expressed above, we affirm the judgment of the WCJ assessing penalties and attorney fees to Georgia Pacific. Costs of this appeal are assessed to Georgia Pacific.
AFFIRMED.
NOTES
[1] We are aware that La. R.S. 23:1201.2 provides for an award of attorney fees when an employer's or insurer's discontinuance of benefits is arbitrary, capricious or without probable cause. Odom v. International Paper Co., 31,826 (La.App.2d Cir. 5/5/99), 736 So.2d 290, 296. However, the failure to authorize a medical procedure is more akin to the failure to furnish benefits; thus, any attorney fees awarded in the instant case would fall under 23:1201. Nowlin v. Breck Construction Co., 30,622 (La.App.2d Cir. 6/24/98), 715 So.2d 112.