h BROWN, J.
Defendants, Davison Transport, Inc., and its self-insurer, Davison Insurance Agency, Inc., have appealed from a workers’ compensation judgment ordering them to remove and replace the medical case manager assigned to claimant, Joe Martin, and imposing penalties and attorney fees. Finding no error, we affirm.

Facts and Procedural History

Claimant, Joe Martin, a truck driver, was employed by Davison Transport, Inc. On November 29, 1998, while Martin was driving an 18-wheel tractor-trailer rig carrying 3,800 gallons of caustic soda, an accident occurred in which he was seriously injured. The cab he was driving flipped over several times before coming to rest upside down in a body of water. At some point Martin was ejected from the cab; he sustained severe injuries to his cervical spine, scapula, tailbone, an elbow and an ankle.
Martin was paid temporary total disability and medical benefits. Asserting that defendants refused to allow him to choose his own specialist, Martin filed a claim with the OWC. In their answer, defendants took the position that Martin was allowed his choice of doctor but that he wanted to change physicians because he didn’t like what he was being told by the orthopedic specialist who had been treating him. The parties reached an agreement recognizing Martin’s right to evaluation and treatment by another specialist and dismissing Martin’s claim for attorney fees and penalties.
Martin filed an amended claim with the OWC on May 3, 2000, urging that his weekly disability rate should be $367 instead of $281.37 and that defendants refused to approve necessary medical equipment, i.e., a | ^motorized wheelchair and lift. Thereafter, defendants sought an order to compel Martin and his attorney to allow defendants, through Sheila Robbins, the medical case manager selected by defendants, to communicate directly with Martin and his health care providers.
On August 8, 2000, Martin filed a rule to have defendants ordered to: (1) reimburse him for a $500 medical evaluation fee; (2) assign him another case manager; (3) refrain from any further direct contact with his health care providers; and (4) pay attorney fees/costs associated with the rule. Defendants’ response was that the rule should be denied because: (1) assignment of a case manager was within the sole discretion of the employer/insurer; (2) the current case manager should be maintained; and (3) Martin failed to allege that his opportunity to receive medical treatment had been sabotaged or otherwise interfered with by defendants.
Following a hearing on the rule filed by Martin, judgment was signed on October 24, 2000, granting the following relief:
*756 (1) Defendants were ordered to reimburse the $500 deposit paid .by Martin’s attorney to an out-of-town health care provider.
(2) Defendants were ordered to replace Sheila Robbins, the medical case manager, with a new case manager, one who had neither worked with nor had a previous relationship with defendants or their employees.
(3) The new case manager was ordered to meet with Martin and submit to the WCJ a recommendation regarding Martin’s treatment and plan for recovery.
(4) Defendants were ordered to pay $2,000 in penalties and $3,000 in attorney fees for:
(a) failure to timely provide Martin with a motorized wheelchair;
(b) delay in providing medical records to Martin’s choice of physician;
(c) apparent disregard for Martin’s health; and
|3(d) lack of knowledge of Martin’s medical condition, means of transportation and living arrangements.
It is from this October 24, 2000, judgment that defendants have suspensively appealed.[1]

Discussion

Defendants take issue both with the WCJ’s removal of Sheila Robbins, the medical/nurse case manager utilized by them to coordinate Martin’s medical care, and with the imposition of attorney fees and penalties. Rather than summarize separately the trial testimony and the WCJ’s factual findings, we will instead reproduce below the WCJ’s reasons for judgment which contain both her findings of fact and references to the pertinent supporting testimony.
The following is excerpted from the WCJ’s reasons:
[T]he next issue concerns the appointment of a case manager. So therefore, what I’ve had to determine is whether there has been proper conduct between the case manager, or whether she has fulfilled her duties as a case manager in a manner that would assist Mr. Martin’s recovery. I find that she has not. When I look at this wheelchair issue I think that what is clear to me is that Ms. Robbins was more concerned with the costs adjustment for the insurance company than she was with Mr. Martin’s health. When I looked at this file, and the medical records from these doctors make it real clear that Mr. Martin went through a very traumatic accident.... And when I hear that the prescription— first, they find out about he needed the wheelchair and then they wanted a prescription. I can understand that. But the prescription was received. And after the prescription was received, she contacted a company that could provide the motorized wheelchair. When they gave her an amount she wanted to shop around. Okay. That’s fine.... They have the right to shop around. But you don’t have the right to have the time lapse between the shopping around and the time that he ultimately gets this wheelchair. It appears to me, or the record indicates that they first knew about the motorized wheelchair back in February. He received it in the late part Rof July. She sent him to Samaritan. They said, okay, “we have it.” Then she decided that she wanted to shop around, so then she sent him to American. They had a used wheelchair that didn’t even fit. That tells me that *757 somewhere along the way she didn’t do her job, because she should have known the specifications. And even she said in her own testimony that she thought it would be better to have an OT [occupational therapist] examine him for that chair. She would have then known whether the chair at American would have fit. So she had a right to have — to assist the insurance company in the reduction of costs. But she didn’t have a right to do it at the detriment of Mr. Martin.... [Finally, after it didn’t work with American, she went with Home Care Supply. She should have contacted Home Care Supply the same time she contacted Samaritan to get some estimates. If she was interested in defraying costs, she should have got some estimates from the beginning. She finally contacted Home Care Supply who took care of it, and the costs (sic) was $5,833.50; less than an $80 difference than what was initially done with Samaritan. So I find that the lapse between the time that the defendants knew about the fact that he needed a motorized wheelchair, which was February 2000, and the time that he received that motorized wheelchair in July of 2000, was certainly unreasonable. And because of that, a penalty is assessed against the defendants in the amount of $2,000. Attorney fees are awarded in the amount of $3,000 for their failure to timely provide this wheelchair.
[A]nother reason for that penalty is ... the delay in providing the medical records to Dr. Carson. They knew back in June that the medical records were requested by Dr. Carson. They had the medical records. All they had to do was make a copy of them and forward them to Dr. Carson. That excuse that another doctor had them and they knew the other doctor wasn’t providing them. Then to me, then the burden shifted to take care of it.... Ms. Robbins had them in her possession and would not take the expense of copying those medical records and send them to the doctor. To me that sounds like there was a complete disregard for this man’s health and his need to have medical treatment. ... So that’s the second reason for that award of penalties and attorney fees.
The plumbing issue. Ms. Robbins testified that in March of 2000 she was there. She noted that there was a hand-held shower there, but that it wasn’t working. So she contacted the landlord. Didn’t get any response. So then, she sent him a letter. Still didn’t get any response. Okay. So what happened about the shower issue? I don’t have — I still don’t have an answer to that. Does this mean that Mr. Martin has had to go through the pain and anguish of being able to simply keep himself clean; that his family is having to lift him in and out of a tub? Where is the regard for this man’s health and the pain and suffering that he’s having to deal with just for something as simple as that? I don’t see it. I don’t find it. It seems to me that the case manager |ficould have visited the home of the landlord; made another telephone call. I just don’t see what has happened for Ms. Robbins that shows me that there was any regard for Mr. Martin’s health. That’s another reason for the penalties and attorney fees.
She told me today that she just found out about his transportation, that it was broken down. That tells me there was a lack of communication continuously between Ms. Robbins and Mr. Martin.... I’m of the opinion that she’s on the side of the insurance company. And to me, that is interfering with any type of independent action she can take in this matter. Therefore, the claimant’s request *758 that she is replaced as the case manager in this case is granted.
Another reason for the penalties and attorney fees is this ramp. She first knew about the problem with the ramp on March 29th, 2000. The first time she contacted a contractor based on her own testimony wasn’t until July 25th, 2000, several months from the time that she knew about it. And she finally got a bid August 22nd, 2000.
... She just found out—when I asked her about Mr. Martin moving. Mr. Martin moved, based on his statement, a month and a half ago. She knew nothing about it. So I don’t know—it appears that she’s in constant communication with Ms. Cary. It appears that Ms. Cary depended on her to provide the medical management for Mr. Martin, but she has not done that....
So based on the problem with the wheelchair, the problem with the ramp, the problem with her lack of knowledge concerning the claimant’s condition, his transportation, the fact of where he’s living, her failure to provide those medical reports when she had them in her possession, the fact that obviously she considers her loyalties to be to the insurance company, and therefore, her independence is questioned by this Court; the fact that she failed to provide the wheelchair in a timely manner; as I said, the request is granted.
... [E]ven if I didn’t replace her at this point or order that she is replaced, I don’t think Mr. Martin—any trust that may have ever been between the Martins and Ms. Robbins has been destroyed.
The WCJ’s factual findings are entitled to great deference under the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/04/00), 768 So.2d 774. Both issues raised by defendants |fiare dependent upon the same factual findings. We will first address the propriety of the WCJ’s imposition of penalties and attorney fees.
An employer or insurer who fails to commence payment of compensation benefits timely, to pay continued compensation benefit installments timely or to pay medical benefits timely may be subject to penalties not to exceed $2,000 and attorney fees, unless the claim is reasonably controverted or the nonpayment results from conditions over which the employer and insurer have no control. La.R.S. 23:1201; Williams v. Rush Masonry, Inc., 98-2271 (La.06/29/99), 737 So.2d 41; Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885; Shields, supra.
Failure to authorized a medical procedure or treatment for an eligible employee is deemed to be a failure to furnish compensation benefits, thereby triggering the penalty provisions of the Workers’ Compensation Act. Cloud v. Ringgold Nurse Care Center, 34,856 (La.App.2d Cir.06/20/01), 792 So.2d 812; Gay v. Georgia Pacific Corp., 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101; Roach v. Eagle Water, Inc., 31,912 (La.App.2d Cir.05/05/99), 737 So.2d 182; Fisher v. Lincoln Timber Co., 31,430 (La.App.2d Cir.01/24/99), 730 So.2d 973; Ward v. Phoenix Operating Co., 31,656 (La.App.2d Cir.02/24/99), 729 So.2d 109.
“Reasonably controverted” as explained by the Louisiana Supreme Court in Brown, supra, mandates a lesser standard than the previous “arbitrary and capricious behavior” rule. To determine whether a claimant’s right has been reasonably controverted, the court must ascertain whether the employer or its insurer engaged in a nonfrivolous legal dispute or possessed *759 17factual and/or medical information to reasonably counter the factual and medical information presented by the claimant. Id. at 890; Shields, supra.
The WCJ has great discretion in determining whether to award penalties and attorney fees and her decision will not be disturbed absent manifest error. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Anthony v. BE & K Construction, 32,729 (La.App.2d Cir.05/10/00), 760 So.2d 608, writ denied, 00-1673 (La.09/15/00), 768 So.2d 1280.
La.R.S. 23:1203 requires the employer to furnish “all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” In light of this mandate, an employer must rely upon competent medical evidence to deny medical treatment. Shields, supra; Harrington v. Coastal Construction & Engineering, 96-681 (La.App. 3d Cir.12/11/96), 685 So.2d 457, writ denied, 97-0109 (La.03/07/97), 689 So.2d 1375. The underlying reason for the provisions allowing the imposition of penalties and attorney fees is to combat the indifference by employers and insurers toward injured employees. Harvey v. BE & K Construction Co., 34,057 (La.App.2d Cir.11/15/00), 772 So.2d 949, writ denied, 00-3560 (La.03/09/01), 786 So.2d 732; Ward, supra.
As noted above, pursuant to La.R.S. 23:1203, defendants are required to furnish Martin with all necessary medical care, which includes the timely procurement of needed equipment and supplies, and necessarily requires a complete, up-to-date knowledge of his medical condition, living arrangements and transportation needs.
|sTo facilitate Martin’s treatment, defendants chose to utilize the services of Sheila Robbins, a medical/nurse case manager. Ms. Robbins testified that the role of a case manager is to coordinate medical care for an injured worker, including the assessment, development, monitoring and, if needed, modification of a treatment plan. To fulfill her job responsibilities, a case manager must work closely with both the injured worker and his health care providers. Ms. Robbins emphasized that the bottom line for medical case management is to ensure that a claimant gets quality medical care in a cost effective manner.
Although she was hired by defendants, Ms. Robbins’ primary responsibility was to Martin. After reviewing the record in its entirety, we find no abuse of the WCJ’s discretion in her award of penalties and attorney fees in this matter. There is ample support in the record for the WCJ’s factual conclusion that defendants did not reasonably controvert Martin’s claim in that they: (1) failed to timely provide Martin with a motorized wheelchair; (2) delayed providing medical records to Martin’s choice of physician; (3) did not exhibit regard for Martin’s health; and (4) lacked up-to-date knowledge of Martin’s medical condition, means of transportation and living arrangements. These actions, taken together or alone, clearly qualify as a failure to furnish compensation benefits and therefore served to trigger the penalty provisions of the Louisiana Workers’ Compensation Act. See Cloud, supra; Gay, supra.
Defendants also assert that the WCJ did not have the authority to remove and replace the medical case manager. According to defendants, because an employee does not have the right to choose who serves as his | flmedical case manager, it logically follows that the employee does not have the right to seek removal of a case manager appointed by the employer. In support, defendants cite Baird v. Policy *760 Management Systems, Inc., 31,715 (La.App.2d Cir.03/31/99), 731 So.2d 461.
We disagree. We have read Baird, supra, closely and find, however, that it simply holds that an injured worker does not have the right to choose his medical/nurse case manager.[2] We decline to extend the reasoning employed by the court in Baird, supra, to this case. Were we to do so, we would effectively preclude injured claimants from seeking judicial review of issues material to their medical care which, as in the instant case, sometimes involve unilateral decisions of their employers and/or their insurers over which they would otherwise have no control or input.
In the case sub judice, the basis for Martin’s complaints of inadequate or untimely medical care is the actions and/or inactions of defendants’ medical/nurse case manager, Sheila Robbins. These same acts or failures to act also form the basis for the WCJ’s award of penalties and attorney fees. While we recognize that consideration of cost containment concerns is a legitimate function of medical case management, we must emphasize that a case manager’s primary responsibility is NOT to the employer or insurer, but to the injured worker. Ms. Robbins has failed to fulfill her duties to Martin and we find no abuse of discretion in the WCJ’s decision to order her removal and replacement, particularly in light of the WCJ’s finding that the relationship between Martin and Ms. Robbins has been irreparably 1 ^damaged by her misguided sense of loyalty to defendants and her seeming disregard for Martin’s medical needs. We note that defendants maintain the right to choose Ms. Robbins’ replacement. See Baird, supra.
in his appellate brief, Martin sought an increase in attorney fees. Because he did not answer the appeal seeking the same, however, we are procedurally precluded from granting additional attorney fees.

Conclusion

For the reasons set forth above, the judgment of the Workers’ Compensation Judge is affirmed. Costs of this appeal are assessed to defendants, Davison Transport, Inc., and Davison Insurance Agency, Inc.
AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with reasons.

. In the interim, however, a new case manager, Mandy Hammond, was appointed. Ms. Hammond’s initial evaluation and report were also filed with the court.

. Incidentally, the case manager that the claimant in Baird, supra, sought to have replaced was Sheila Robbins, the case manager utilized by defendants in the instant case.