730 So.2d 973 (1999)
Roger FISHER, Plaintiff-Appellee,
v.
LINCOLN TIMBER COMPANY, Defendant-Appellant.
No. 31,430-WCA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1999.
*975 Michael S. Coyle, Counsel for Defendant-Appellant.
Gary D. Nunn, Jonesboro, Counsel for Plaintiff-Appellee.
Before NORRIS, BROWN and CARAWAY, JJ.
NORRIS, Chief Judge.
Lincoln Timber Company ("LTC") appeals those portions of a Workers' Compensation Judge's order awarding its employee, Roger Fisher, temporary total disability benefits, payment for medical treatments by a chiropractor, and penalties and attorney's fees. We amend and affirm as amended.

FACTUAL AND PROCEDURAL HISTORY
On December 3, 1996, Fisher, a log cutter for LTC, was cutting a tree which suddenly began to slide towards him. In order to avoid it, he started to run backwards and fell, landing hard on his left hip and buttocks. The fall almost knocked him out and left him stunned on the ground for about five minutes. Following the fall, Fisher began experiencing pain in his hip and lower back which worsened after about 30 minutes. The fall also made him sick at his stomach.
*976 Fisher was alone at the time of the accident, but his supervisor, Henry Cleveland Jordan, arrived on the scene about 10 to 15 minutes later. Jordan found Fisher experiencing dry heaves and complaining that his lower back was hurting as a result of a fall. Jordan indicated Fisher "kind of appeared to be hurt." Jordan immediately called the office and the son of LTC's owner arrived to take Fisher to a doctor.
Thereafter, Fisher saw Dr. Loren Dale Boersma, a general surgeon. In response to Fisher's complaints of pain in the lower back, buttocks, and the left sacroiliac region, Dr. Boersma conducted a physical exam and diagnosed a contusion of the buttocks even though he found no visible bruises. Fisher exhibited difficulty with back bending and side bending and appeared "stove up."[1] The doctor prescribed pain medication, heat, and bed rest and told Fisher to stay off work for approximately a week. However, Fisher returned on December 9 with continued complaints of pain. Pelvic x-rays revealed no abnormalities while a physical exam showed more limberness but some limited motion in the back as well as a slight curvature of the spine.
Between December 11 and 26, Fisher returned to Dr. Boersma four times with the same complaints; on December 23, he also complained of numbness in his groin area. An additional x-ray of the lumbar spine showed minimal scoliosis and arthritis but no existence of acute injury. It was the doctor's opinion that by December 26, Fisher should have been able to return to work in spite of a diagnosis of chronic arthritis. At that time, he discharged the patient from his care, being of the opinion the bump from the fall was relatively minor and that even had it jarred the arthritis and aggravated it, the injury would not be sufficient to keep Fisher from working. Dr. Boersma saw Fisher one additional time on February 4, 1997. Although the patient continued his original complaints, the doctor's opinion remained unchanged. Nonetheless, he agreed with a subsequent doctor's suggestion that an MRI be performed.
On December 30, 1996, Fisher went to Dr. John Timothy Ogden, an orthopedic surgeon, for a second opinion. Fisher persisted in his complaints of lower back pain radiating to the left hip, numbness in his groin and impotence. A physical exam showed some objective symptoms of pain including muscle spasms. An x-ray confirmed Boersma's diagnosis of spinal arthritis and slight scoliosis but did not disclose an acute injury. Thus, Dr. Ogden opined that Fisher had a lumbar strain. He recommended Fisher remain off work for approximately two weeks, prescribed pain medication, and referred him to physical therapy and a urologist.[2] Fisher again saw Dr. Ogden on January 16, 1997. He maintained his complaint of lower back and hip pain and also indicated that the physical therapy was not providing relief. Another round of tests that indicated pain radiating into the lower back and hip and the continued groin numbness caused the orthopedist to change his diagnosis to that of lumbrosacral radiculitis, i.e. "pinched nerve." Fisher was again deemed unable to return to work.
On Dr. Ogden's recommendation, a lumbar MRI scan was performed in late February. That test revealed moderate multi-level degenerative change, disc disease, and arthritic changes which Dr. Ogden found to be normal for Fisher's age. Dr. Ogden concluded it was difficult to find anything on the MRI to explain Fisher's condition. Dr. Boersma also reviewed the MRI and consulted with Dr. Ogden. However, he did not change his diagnosis of chronic arthritis and was of the opinion that the accident could have exacerbated the situation but was not sufficient enough to cause a continued disability.
Dr. Ogden last saw Fisher on March 4 for another physical exam and review of the MRI results. Fisher continued his complaints of pain and showed some limited range of motion. At that time, Dr. Ogden *977 went back to his original diagnosis of lumbar strain, a condition he noted usually gets better in four to six weeks but can persist for up to six months. Furthermore, as the symptoms were "subjective," the orthopedist felt that the extent of the care he could provide was over and therefore, recommended a pain management program. Dr. Ogden felt Fisher might be able to do modified work after April 1, but recommended Fisher not return to work because of continued complaints of pain. The doctor also recommended some type of rehabilitation therapy. While he believed Fisher could possibly return to work by June 3, 1997 after such treatment, he indicated that this estimate would depend upon how Fisher responded and the extent of his improvement. Nonetheless, Dr. Ogden testified that at no time when he saw Fisher did he think Fisher was capable of returning to work.
Continuing to have problems on May 23, 1997, Fisher began seeing Dr. Jeffrey L. Brockman, a chiropractor with over ten years experience. On that visit, Fisher continued his complaints of low back pain, left hip pain, impotence, and groin area numbness. Upon conducting a physical exam which revealed both objective and subjective symptoms of pain and reviewing the previous x-ray and MRI reports, Dr. Brockman diagnosed sacroiliac sprain/strain with radicular neuropathy. Based on Fisher's lack of a prior history of back problems, the chiropractor concluded that Fisher's problems were a direct result of his fall. Starting that day, Brockman began chiropractic treatment which continued until July 14, the day prior to giving a deposition later used at the hearing on the matter. Generally, Fisher showed steady improvement despite occasional setbacks. The chiropractor opined that the patient was not malingering and at the time of the deposition, concluded Fisher was still continuously and totally disabled and unable to return to work. He anticipated a return in six to eight weeks. Nonetheless, this view, expressed in a pretrial letter to Fisher's attorney, had changed in October after continued treatment. Then, Dr. Brockman found Fisher "still disabled from all but the most sedentary work."
At the time of his accident, Fisher earned an average weekly wage of $597.00. LTC paid temporary total disability ("TTD") benefits of $286.36 per week until April 4, 1997, having terminated them based on Dr. Ogden's report that Fisher should be able to return to work. Nonetheless, the employee's attorney contended that LTC actually owed the maximum weekly benefit of $341 and brought this to the employer's attention on several occasions starting in early January 1997. LTC attempted to make up the difference in May 1997 by issuing Fisher a lump sum check of $750.12, attributing the deficiency to a clerical error. As for medical treatment, LTC paid the expenses for the treatment by Dr. Boersma and Dr. Ogden. However, the employer, deeming it to be unnecessary, refused to pay for the chiropractic treatment by Dr. Brockman.
On February 7, 1997, Fisher filed the instant contested claim. The Workers' Compensation Judge ("WCJ") held a hearing on the matter on October 29, 1997. In a judgment issued on October 31, the WCJ found that Fisher had suffered a work-related accident and injury. Additionally, the WCJ concluded that Fisher is entitled to all reasonable and necessary medical treatment including but not limited to the treatment by Dr. Brockman. She further found him to be disabled through the day of trial and entitled to TTD benefits from the date of the accident until further order of the court. It was the WCJ's opinion that the disability was caused by the work-related fall. Finally, the WCJ found that LTC was arbitrary and capricious in failing to pay the correct rate of compensation and in failing to timely pay for an MRI, awarding $2000 in penalties and $2000 in attorney fees on each violation. A claim for penalties and attorneys fees relative to the chiropractic treatment was denied as being well controverted. LTC has appealed, advancing four assignments of error.

DISCUSSION

Disability Benefits
By its first assignment of error, LTC contends the WCJ erred in awarding Fisher TTD benefits from the date of his accident *978 and continuing until further order of the WCJ. The employer maintains that no doctor found objective symptoms of an injury, and thus, plaintiff failed to prove he is disabled as a result of the employment accident.
In a compensation claim, the employee bears the initial burden of establishing the causal connection between the disability and the work-related accident by a reasonable preponderance of the evidence. The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. The causal relationship can be established when the employee proves that before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Quinones v. US Fidelity & Guaranty Co., 93-1648 (La.1/14/94), 630 So.2d 1303; Jackson v. Creger Automotive Co., Inc., 29,249 (La.App.2d Cir.4/2/97), 691 So.2d 824, writ denied, 97-1436 (La.9/26/97), 701 So.2d 984; Allen v. Misco Paper, 27,146 (La.App.2d Cir.8/23/95), 660 So.2d 175. Additionally, where the employee suffers from a pre-existing medical condition, he may still prevail if he proves the accident aggravated, accelerated, or combined with the disease or infirmity to produce a disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689. Whether an employee met his burden depends upon the totality of the evidence, including lay and medical testimony. Tate v. L & A Contracting, 26,110 (La. App.2d Cir.9/21/94), 643 So.2d 263, writ denied, 94-2834 (La.1/27/95), 649 So.2d 385.
Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the WCJ that more probably than not the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Id. Furthermore, medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the WCJ after weighing the evidence. Id.
An employee is entitled to TTD benefits if he sustains a work-related injury "producing temporary total disability ... to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, or experience[.]" La. R.S. 23:1221(1)(a). When such an employee is not working, TTD compensation is proper "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability," that he is physically unable to engage in any employment or self-employment, "including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain[.]" La. R.S. 23:1221(1)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Cleveland v. Delhi Guest Home, 29,506 (La. App.2d Cir.5/7/97), 694 So.2d 607; Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456.
The issue of disability within the framework of the worker's compensation law is not solely a medical determination. Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831. The totality of the evidence, lay and medical, resolves the issue. Taylor, supra; Jackson v. Georgia Cas. and Sur. Co., 513 So.2d 530 (La.App. 2d Cir.), writ denied, 515 So.2d 448 (1987). The fact finder is free to accept or reject expert opinion. Taylor, supra. Put differently, the trial court may accept or reject the opinion of a physician or medical expert depending upon that expert's qualifications, credibility and testimony. Davison v. Horseshoe Casino, Inc., 31,166 (La.App.2d Cir.10/28/98), 720 So.2d 785; Owens v. Georgia Pacific Corp., 535 So.2d 990 (La.App. 2d Cir.1988); Jackson v. Georgia Cas. and Sur. Co., supra.
*979 As in other civil cases, factual findings in workers' compensation cases are subject to the manifest error rule. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Mitchell, supra. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352. Reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Mitchell, supra.
At the hearing, Fisher testified that he had never suffered any type of back or hip pain prior to his December fall while working for LTC. He stated that after that time he has continued to have pain in his lower back and buttocks area as well as experiencing impotence. Fisher noted that he has always done physical work but is now able to do only a few things. While he is able to walk for exercise, his hip and back hurt after about 45 minutes. Additionally, Fisher admitted a prior compensation claim involving two fractured ribs while working offshore and denied any recent non-work injuries.
Both his wife and daughter confirmed that he has been in pain and unable to do many of his usual activities since the accident, noting he had no prior limitations. Jordon, his supervisor, classified him as a "pretty good worker" who had "done his job." Indeed, Jordon noted that if he had not believed that Fisher had an accident he would not have called for assistance on the radio and stated that Fisher appeared hurt at the job site as well as later, when he drove Fisher to his car after the examination by Dr. Boersma.
Regarding the medical evidence, Dr. Boersma indicated in his deposition that Fisher reported no prior history of low back pain. Indeed, he found Fisher to be "stove up" on the initial visit with some limitation of motion in his back even though he found no visible bruising. While it was his opinion that Fisher had a chronic arthritic condition in his back, the general surgeon admitted that the accident could have exacerbated the situation and found the numbness in the groin area to be "a pretty peculiar complaint." Moreover, Dr. Boersma, who admitted regularly treating LTC's employees as well as its owner, never saw Fisher again after February 4, 1997. Yet, he believed that Fisher's condition would improve if he just went back to work.
Also testifying by deposition, Dr. Ogden specifically noted that in addition to Fisher's subjective complaints his initial physical exam revealed objective indications negating any malingering. While these objective criteria were not present on the last visit, the orthopedist admitted that because of the continued subjective complaints he did not rule out genuine pain. Indeed, Fisher still had a limited range of motion on March 3, 1997. Furthermore, he recommended a pain management program and did not expect Fisher to return to work until three months later, all of which indicated he probably believed Fisher was not malingering. He also noted it was not uncommon for a person to have trouble for six months after suffering a lumbar strain; at no time when he saw Fisher did he think him capable of returning to work. In fact, he admitted that his assessment of Fisher's return to work depended on Fisher's response to additionally recommended therapy, treatment which LTC never approved and which Fisher did not receive.
In Dr. Brockman's deposition, he laid out in great detail the physical examinations he conducted on Fisher. Specifically, he stated that he found both objective and subjective indications of pain, a fact cited by the WCJ in her reasons for judgment and contrary to LTC's arguments to this court. He "absolutely" did not believe Fisher to be a malingerer, basing this on the complete series of tests he conducted. The chiropractor further opined that the diagnosis of sacroiliac sprain/ strain with radicular neuropathy was a direct result of the fall and stated that it was not uncommon for such injuries to produce symptoms for four to eight months after the accident.
Brockman noted that Fisher had shown steady improvement since the beginning of chiropractic treatments; at the time of the *980 deposition, he felt Fisher should be able to return to work in a relatively short period of time. However, in a letter dated a little over a week before the WCJ hearing, he noted some objective symptoms persisted and concluded that Fisher was still disabled to an extent which prevented him from doing all but the most sedentary work. Nonetheless, he also noted that Fisher had "reached maximum improvement" that could be gained from the chiropractic care and opined that continued treatment would provide only "palliative relief."
Reviewing all the evidence presented to the WCJ, including the medical testimony and documentation, we find that the record reasonably supports the WCJ's conclusion that Fisher's work-related fall caused his disabling lower back problems. Furthermore, we find that the record additionally supports the conclusion that Fisher proved that he was entitled to TTD benefits through October 20, 1997, the day of Dr. Brockman's last examination.
This record presented conflicting medical opinions. Clearly, the conclusions reached by Dr. Boersma were inconsistent with those reached by Dr. Ogden and Dr. Brockman. Furthermore, when Dr. Ogden last saw Fisher, he did not believe he was yet capable of returning to work and provided that the time period for such return would depend upon Fisher's response to therapy which Ogden could not provide. This view did not contradict the later positive findings by Dr. Brockman that Fisher continued to be unable to work through October 20, 1997. Indeed, the positive findings of a medical expert may be afforded greater weight than the negative findings as to the existence or not of a particular condition. Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La. App. 2d Cir.1987); Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La.App. 3d Cir.1993).
The WCJ is afforded considerable discretion in evaluating expert testimony, and her decision to accept the testimony of one expert over the conflicting testimony of another can virtually never be manifestly erroneous. Connolly v. Seeley Service Const., 97-1620 (La.App. 1st Cir.5/15/98), 712 So.2d 636; Fontenette v. McDermott, Inc., 95,0190 (La.App. 1st Cir.10/6/95), 694 So.2d 266. Therefore, considering the evidence as a whole, both lay and medical, and the WCJ's particular reliance on the opinions of Drs. Ogden and Brockman over that of Dr. Boersma, we can not find that the WCJ committed manifest error in finding that Fisher met his burden of proving that he was entitled to TTD benefits. See, Labarcena v. Schwegmann's Supermarkets, 98-190 (La.App. 5th Cir.7/28/98), 716 So.2d 478; Stelly v. Guy Scroggins, Inc., 96-401 (La.App. 3d Cir.10/9/96), 682 So.2d 782, writ denied, 96-3060 (La.2/7/97), 688 So.2d 503.
Even so, TTD benefits "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." La. R.S. 23:1221(1)(d). Furthermore, even the claimant who can perform only sedentary work is not entitled to TTD benefits. Boutte v. Langston Companies, Inc., 97-972 (La.App. 3d Cir.2/4/98), 707 So.2d 1315; City of Jennings v. Dequeant, 96-943 (La.App. 3d Cir.11/5/97), 704 So.2d 264 writ denied, 98-0610 (La.4/24/98), 717 So.2d 1174. Consequently, we cannot find that the record supports an award of TTD benefits past the date of Dr. Brockman's last examination. Clearly, the chiropractor's testimony shows Fisher was likely able to do some work on that date. Thus, it was manifestly erroneous for the WCJ to extend TTD benefits any longer.[3] We thus amend the judgment of the WCJ to terminate such benefits effective October 20, 1997. Judgment will be rendered accordingly.

Chiropractic Treatment
In its second assignment, LTC contends that the WCJ erred in finding Dr. *981 Brockman's treatment to be a necessary and reasonable medical expense. We disagree.
In the event of a compensable injury, the employer is obligated to furnish all necessary medical expenses. La. R.S. 23:1203 A. More particularly, when the accident's relationship to the injury is unquestioned, and chiropractic treatments are determined beneficial and necessary, the employer is responsible for these expenses. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991); Tate, supra. Additionally, an injured party is entitled to choose chiropractic treatment to alleviate his or her symptoms even though this choice may be objectionable to advocates of medical treatment. Temple v. Shannon, 505 So.2d 798 (La.App. 2d Cir.1987). Nonetheless, the worker claiming medical benefits must prove by a reasonable preponderance of the evidence the necessity and relationship of the treatment to the work-related accident. Lynn, supra; Jackson v. Creger Automotive Co., Inc., supra.
Having previously determined Fisher's back complaints were caused by his work-related accident, we only consider whether the chiropractic treatments by Dr. Brockman were medically necessary. Reviewing the record, it is clear that Dr. Brockman felt that the chiropractic treatments given to Fisher helped improve his condition over time. While not completely alleviating his pain and other problems, the record does show that it afforded him relief. In fact, Fisher testified himself that the chiropractic treatments had helped him "considerably" in reducing his pain. This result was confirmed by his daughter and wife. Furthermore, neither of the medical doctors testified that such medical treatments were unwarranted. Accordingly, we affirm that portion of the decree. Nonetheless, based on the previously mentioned letter from Dr. Brockman, we find that such treatment was no longer a necessity after October 20, 1997, Fisher's last visit before trial. Therefore, we amend the order to award payment of medical expenses incurred from Dr. Brockman's treatment only through that date.

Penalties and Attorney Fees
In its last two assignments of error, LTC contends the WCJ erred in assessing penalties and attorney fees for failing to timely pay an MRI bill for Fisher as well as for not paying the employee the correct rate of compensation. We find no merit in either of these assignments.
The employer or insurer must pay all compensation benefits due the injured employee within 14 days of the notice of the injury and loss. La. R.S. 23:1201 B. All medical benefits must be paid within 60 days after the employer or insurer receives written notice thereof. La. R.S. 23:1201 E. Failure to pay such benefits shall result in the impositions of a penalty, together with reasonable attorney fees for each disputed claim. La. R.S. 23:1201 F. However, such penalties and attorney fees shall not be assessed if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1202 F(1). The WCJ has great discretion in deciding whether to award or deny penalties and attorney fees and such decision will not be disturbed absent abuse of that discretion. Nowlin v. Breck Const. Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112; Jackson v. Creger Automotive Co., Inc., supra; Bradley v. Justiss Oil Co., 618 So.2d 646 (La.App. 2d Cir.1993).
According to the record, Lincoln General Hospital sent a bill to Roger Fisher for the MRI requested by Dr. Ogden on February 26, 1997. Fisher's attorney sent a copy of that bill to LTC's counsel via correspondence dated March 13, 1997. It is undisputed that the bill was not paid until September 3, 1997, well over 60 days after it should have been received. Nonetheless, Hayes Colvin, LTC's owner, insisted at the hearing that he paid the bill shortly after it was received. Yet, when shown counsel's letter, he admitted he had probably received it even though he could not recall it; as an explanation for the late payment, he offered only that he would have paid it on time had he been sent a "bill" rather than a letter. Where the fact of late payment is uncontradicted and an employer fails to show that the *982 late payment resulted from conditions over which he had no control, an award of penalties and attorney fees is mandated. Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947. LTC's contention that penalties and attorney fees are not warranted because it authorized the treatment is meritless. The statute clearly requires payment within the specified time period, thus preventing the employee from being burdened with possibly having to pay a bill he incurred but which should not be his responsibility.[4] Therefore, on this record, we do not find that the WCJ abused her discretion in awarding penalties and attorney fees for LTC's failure to timely pay the MRI bill.
Regarding the penalties and attorney fees assessed for its failure to pay the correct rate of weekly compensation, LTC contends that this deficiency resulted from a mere clerical error for which it should not be penalized. It does not suggest the amount due was ever reasonably in dispute. Generally, an employer will not be penalized for a simple miscalculation of benefits. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2d Cir.), writ denied, 567 So.2d 1127 (1990); Harris v. Langston Co., 94-1266 (La.App. 3d Cir.4/5/95), 653 So.2d 789, writ denied, 95-1178 (La.6/23/95), 656 So.2d 1020. Nonetheless, an employer cannot urge its own poor clerical work to escape penalties and attorney fees for nonpayment. Brown, supra; Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989). Nor can an employer avoid such sanctions when it makes no attempt to correct an error that was pointed out to it. Brown, supra; Barton, supra; Stegall v. J & J Exterminating, 94-1279 (La.App. 3d Cir.3/1/95), 651 So.2d 400.
At the hearing, Michelle Williams, LTC's secretary and payroll clerk, indicated that she had calculated Fisher's compensation rate on the "daily workers' compensation formula." She admitted that this was the only way she knew how to figure the rate and did not know about calculating it on an hourly basis, the admittedly correct formula, until later on. She noted that she took her direction as to how to make the calculations and the amounts to be paid from the owner, Mr. Colvin, or his wife. Additionally, she conceded that while Fisher had been paid on a regular basis some checks were not paid on time. On this evidence alone, the WCJ could have found that the problem with the under-payment of compensation was not beyond LTC's control.
Even so, the record also reveals that Fisher's attorney sent letters to LTC, on January 2 and January 29, 1997, stating that the weekly amount of $286.36 which the employer was paying was less than the amount due. The second letter even suggested Mr. Colvin seek legal advice on calculating the amount. Indeed, in a January 24 letter to plaintiffs counsel, LTC's attorney acknowledged that his client was in the process of verifying the correct amount of compensation. Nonetheless, LTC continued to pay the same amount until it terminated the benefits. Not until May 29, 1997 did LTC finally attempt to make up the difference and even then, shorted Fisher $170. In light of the totality of the evidence, the WCJ surely could have found LTC had ample time to correct its initial mistake and that it offered no adequate explanation of why such correction was beyond their control. See Barton, supra; Skipper v. Acadian Oaks Nursing Home, 93-1502 (La. App. 3d Cir.6/1/94), 640 So.2d 674, writ denied, 94-1795 (La.10/14/94), 643 So.2d 163; Green v. Provencal Tie Mill, 392 So.2d 722 (La. App.3d Cir.1980); cf. Brown, supra. Consequently, we find no abuse of discretion in this award of penalties and attorney fees.[5]

CONCLUSIONS
For the foregoing reasons, we affirm the judgment insofar as it found a compensable *983 injury to Fisher's lower back, found chiropractic treatment to be a necessary medical expense, and assessed penalties and attorney fees. We amend the judgment, however, to terminate the award of temporary, total disability benefits and chiropractic treatments effective October 20, 1997. Costs of appeal are assessed to LTC.
AMENDED IN PART AND AFFIRMED AS AMENDED.
NOTES
[1] In explaining this term, Dr. Boersma indicated this symptom commonly occurs when a person "in a sedentary occupation, would go out and on a Saturday afternoon, play three ballgames and Sunday morning [they] would be stove up."
[2] Testimony revealed that Fisher never saw the urologist.
[3] At this time, we pretermit any discussion on whether Fisher may be entitled to another type of benefit such as supplemental earnings benefits. That issue was never presented to the WCJ. Therefore, the record contains no evidence from which to make such determination.
[4] In the instant case, LTC, in correspondence from its attorney to Fisher's attorney, authorized Fisher to have the MRI performed. There is no evidence authorization was made directly to the health care provider.
[5] We note that Fisher has failed to ask for an additional award of attorney fees for handling LTC's appeal. Under such circumstances, he is not entitled to an increase for any additional work necessitated by the appeal. Cf. Harvey v. B E & K Const., 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514; Nowlin v. Breck Const. Co., supra. Nor has LTC challenged the reasonableness of the amount awarded for attorney fees or the correctness of the amount levied in penalties.