760 So.2d 608 (2000)
Dorothy ANTHONY, Plaintiff-Appellee,
v.
BE & K CONSTRUCTION, Defendant-Appellant.
No. 32,729-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*611 Taylor, Wellons & Politz by Kelann L. Sigl, New Orleans, Counsel for Defendant-Appellant.
Vinet & Vinet by Robin Lawton Krumholt, Baton Rouge, Counsel for Plaintiff-Appellee.
Before NORRIS, STEWART, GASKINS, KOSTELKA and DREW, JJ.
DREW, J.
The primary issue in the employer's appeal from the award of worker's compensation benefits and medical expenses to claimant, Dorothy Anthony, is whether the Worker's Compensation Judge (WCJ) was manifestly erroneous in finding that claimant was disabled and that the disability was caused by her work-related injury. The employer, BE & K Construction (Defendant), also objected to the award of penalties, based on its contentions that the WCJ applied the incorrect standard and that Anthony's entitlement to benefits and medical treatment was reasonably controverted. For the reasons expressed below, we amend the judgment to delete the award of penalties. In all other respects, the judgment is affirmed.

FACTS AND PROCEDURAL BACKGROUND
On August 16, 1996, Anthony was involved in an accident in the course and scope of her employment. She was threading a pipe when another employee lifted up on the threader. The threader lifted Anthony approximately five feet off the ground. She then was thrown to the ground and the threader landed on top of her. Another co-worker witnessed the accident. Asserting she had immediate pain, Anthony reported the accident. The safety employee on the job site provided her with an ice pack for bruising on her left side.
Anthony received temporary total disability benefits from September 30, 1996, through October 7, 1996, when she returned to work with Defendant for three weeks. Anthony then received temporary total disability benefits from November 1, 1996, through July 3, 1997, when her benefits were terminated due to an alleged overpayment.
On August 14, 1997, Anthony filed a Disputed Claim for Compensation. At that time, Anthony was represented by counsel. Her attorney was authorized to withdraw, however, on February 12, 1998. Anthony represented herself throughout the remainder of the proceedings.
At a pre-trial conference on March 31, 1998, the parties stipulated that Anthony was employed by Defendant on the day of the accident and that the accident was within the course and scope of Anthony's employment. A stipulation was also entered regarding Anthony's compensation *612 rate.[1]
On June 1, 1998, the WCJ conducted a preliminary hearing regarding Anthony's choice of neurosurgeon. The WCJ determined that Anthony had not been examined by Dr. J.A. Bermudez, her choice of neurosurgeon, and ordered Anthony to be examined by Dr. Bermudez as quickly as possible. Anthony then presented the testimony of co-workers who were in the work area when the incident occurred, one of whom had witnessed the entire incident.[2] The matter was continued to allow Anthony to be examined by Dr. Bermudez.
At an August 31, 1998 hearing, Anthony had not yet been examined by Dr. Bermudez and requested to see a orthopedist in Houston. The WCJ denied Anthony's request, but ruled that Anthony was to see an in-state neurosurgeon of her choice within 30 days. The WCJ also ordered an independent medical examination and subsequently appointed Dr. K.E. Vogel as the independent medical examiner.
The remainder of the trial was heard on December 7, 1998. At that time, Defendant requested a continuance to allow Anthony to be examined again by its choice of neurosurgeon, Dr. Don Irby. The WCJ refused to continue the trial, but ordered Dr. Irby to examine Anthony and to report his evaluation within three weeks. At trial, Anthony testified she continually suffered pain and discomfort. She also stated she experienced severe pain when she attempted the recommended physical therapy. Anthony submitted, among other items, medical records from Dr. Carter Cox and LSUMC. Defendant introduced into evidence, among other items, the deposition testimony of Dr. Belchic, Dr. Bulloch, Dr. Irby, and physical therapist, David Johnson. Defendant also submitted medical records, job descriptions, and a Functional Capacity Evaluation.
In Reasons for Judgment issued January 26, 1999, the WCJ concluded that Anthony was disabled as a result of the incident and ordered Defendant to pay benefits and medical expenses. The WCJ also found that Defendant had handled Anthony's case in an "unequivocally arbitrary and capricious" manner and awarded a penalty for Defendant's failure to reinstate benefits and to timely approve medical treatment.
Defendant appealed, specifying the following three assignments of error: (1) that Anthony did not prove that she is disabled; (2) in the alternative, that Anthony failed to prove a casual connection between her disability and the accident; and (3) that the WCJ used the wrong standard in assessing the penalty and that Anthony's entitlement to benefits was reasonably controverted.

LAW AND DISCUSSION
An employee is entitled to compensation benefits if she receives a personal injury by an accident arising out of and in the course of her employment. La. R.S. 23:1031. The employee has the burden of proving, by a preponderance of the evidence, that her disability is related to an on-the-job injury. Taylor v. Columbian Chemicals, 32,411 (La.App.2d Cir.10/27/99), 744 So.2d 704; Stevens v. Wal-Mart Stores, 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id. For the employee to recover, she must show that her employment somehow caused or contributed to the disability, but she need not establish the exact cause. Taylor, supra; Stevens, supra.
*613 An employer or insurer who fails to commence payment of compensation benefits timely, to pay continued compensation benefits installments timely, or to pay medical benefits timely may be subject to penalties and attorney's fees, unless the claim is reasonably controverted or the nonpayment results from conditions over which the employer and insurer have no control. La. R.S. 23:1201; Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41. An employer who discontinues payment of benefits due may be ordered to pay the claimant's attorney's fees, if the discontinuance is arbitrary, capricious, or without probable cause. La. R.S. 23:1201.2; Williams, supra.
As in other civil cases, factual findings in worker's compensation cases are subject to the manifest error rule. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Fisher v. Lincoln Timber Company, 31,430 (La.App.2d Cir.1/24/99), 730 So.2d 973. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir. 9/23/94), 643 So.2d 352. If the fact-finder's findings are reasonable in light of the entire record, the appellate court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Odom v. International Paper Company, 31,826 (La.App.2d Cir.5/5/99), 736 So.2d 290.

Disability
The issue of disability within the framework of the worker's compensation law is not solely a medical determination. Fisher v. Lincoln Timber Company, supra; Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831. The totality of the evidence, lay and medical, resolves the issue. Fisher, supra; Taylor, supra. The fact finder is free to accept or reject expert opinion. Taylor, supra. Put differently, the trial court may accept or reject the opinion of a physician or medical expert depending upon that expert's qualifications, credibility and testimony. Fisher, supra; Owens v. Georgia Pacific Corp., 535 So.2d 990 (La.App. 2d Cir.1988).
Defendant argued that Anthony failed to carry her required burden of proof to demonstrate that she was disabled. Defendant contended that no medical evidence existed to substantiate the WCJ's conclusion and urged this court to reverse.
At trial, the WCJ was presented with evidence of Anthony's lengthy and complicated history of medical treatment following the accident. As noted earlier, immediately after the accident, Anthony reported the incident to the safety employee on the site, who provided Anthony with ice for bruising on her left side. Two weeks later, Anthony sought medical treatment with her family physician, Dr. Carter Cox. To evaluate Anthony's complaints of back and left leg pain, Dr. Cox ordered x-rays of Anthony's lumbar spine. These x-rays revealed no fractures.
On September 26, 1996, Anthony was examined by orthopedic surgeon Dr. Brian Bulloch. Anthony related to Dr. Bulloch her history of the accident with the threader and complained to him of pain in her left leg and lower back. Dr. Bulloch's examination revealed a possible positive result in the straight-leg raising test, but he found no objective findings of injury. Concerned that Anthony had a possible disc injury or a herniated disc, Dr. Bulloch suggested an MRI. The MRI, performed the next day, showed no evidence of disc herniation or neurologic compression. The test did reveal, however, that Anthony had degenerative disc disease and a disc protrusion at L4-5. Dr. Bulloch nevertheless *614 released Anthony to return to work, with certain restrictions.
On the referral of Dr. Bulloch, Anthony was seen by physical therapist David Johnson on October 7, 1996. Dr. Bulloch had provided Johnson with a diagnosis for Anthony of lumbar strain and had ordered physical therapy consisting of a work-conditioning program and a Functional Capacity Evaluation. On her first meeting with Johnson, Anthony complained of pain in her left hip and pain going down her left leg. Johnson observed Anthony and found no objective findings to support her complaints of pain. After the initial meeting, Anthony was seen by Johnson on 17 occasions, during which she was to perform work-hardening exercises. During this time, Anthony continued to complain of pain and Johnson was unable to detect objective findings to support her complaints.
On October 31, 1996, Dr. Bulloch advised Defendant's case manager that Anthony had probably reached maximum medical improvement and would be allowed to return to work based on the results of the Functional Capacity Examination.
Anthony returned to Dr. Bulloch on November 5, 1996, and again on November 15, 1996, with continued complaints of severe back pain. Dr. Bulloch recommended work-hardening physical therapy and a psychological evaluation to help Anthony cope with handling her injury. Dr. Bulloch did not see Anthony again, although he did continue to meet with Defendant's case manager regarding Anthony's condition.
On November 20, 1996, on Anthony's final visit to physical therapy, the Functional Capacity Evaluation was performed. Johnson declared the results invalid, because he believed that Anthony failed to put forth a full effort during the evaluation. Johnson nevertheless indicated that Anthony was cleared for light-duty work.
On December 23, 1996, Anthony went to the emergency room at E.A. Conway Hospital. She complained of left leg weakness, headaches, and nervousness. The emergency room slip indicates that Anthony related that she had fallen at work on August 16. A CAT scan and lumbar spine x-rays were performed, which produced normal results.
On January 20, 1997, Dr. Bulloch informed Anthony's case worker that he believed Anthony to be capable of returning to medium level work activities. Defendant subsequently identified eight jobs for Anthony, each approved by Dr. Bulloch.
On February 17, 1997, Anthony was examined by neurosurgeon Dr. Don Irby. Anthony complained that since the accident she had experienced back pain, pain down both hips, and pain in the anterior part of both thighs. Dr. Irby performed a neurological exam, which produced normal results. A repeat MRI ordered by Dr. Irby indicated a slight disc bulge at L4-5. In Dr. Irby's opinion, Anthony did not require surgery. On March 4, 1997, Dr. Irby recommended that Anthony return to Dr. Bulloch.
On April 23, 1997, Anthony returned to the emergency room at Conway. She once again complained of back pain, leg pain, and headaches. Emergency room personnel referred her to the orthopaedic clinic. One week later, Anthony visited the clinic, where she was seen by orthopedic surgeon Dr. George Belchic. Dr. Belchic prescribed an anti-depressant and told Anthony to return in two weeks. When Anthony returned on May 14, 1997, she expressed continued complaints of low back pain, headaches, and pain in her left leg. Dr. Belchic's examination revealed no findings consistent with Anthony's complaints. He ordered a bone scan and an x-ray of Anthony's left knee, which produced unremarkable results. Dr. Belchic referred Anthony to physical therapy.
On May 22, 1997, Dr. Belchic again examined Anthony and could detect no objective findings consistent with her complaints. *615 Anthony returned to the clinic on June 15, 1997, and June 23, 1997, when the bone scan was performed. The scan revealed problems with L4, which were consistent with mild arthritic changes. Dr. Belchic saw no indications that any changes shown on Anthony's scan were due to trauma.
On July 2, 1997, Anthony returned to the Conway emergency room. She complained of pain in her back, neck, and left leg. She was diagnosed with chronic back pain, but no objective findings were demonstrated to support her complaints.
On July 7, 1997, a myelogram was performed at Morehouse General Hospital. The myelogram confirmed a small herniation in the dural sac in the posterior aspect of L4. On July 16, 1997, Anthony's general practitioner, Dr. Cox, opined that she was unable to work.
Anthony went to LSUMC in Shreveport in September 1997, with complaints of pelvic pain. She returned to the Conway emergency room in October and December of 1997, with complaints of lower abdominal pain and lower back pain.
As a result of a referral from LSUMC, Anthony was seen in Conway's Physical Therapy Department on March 11, 1998. She returned to Conway's emergency room on March 29, 1998, complaining of low back pain. On April 8, 1998, Anthony returned to the orthopedic clinic, expressing the same complaints. Dr. Belchic ordered an MRI, which was performed on April 15, 1998, with normal results. On April 23, 1998, Anthony returned to the clinic complaining of low back pain and urological problems. She was referred to the urology clinic.
On August 16, 1998, Anthony returned to the Conway emergency room, again complaining of low back pain and indicating a burning sensation "all over." An x-ray of her lumbar spine was performed, which yielded no new information.
On October 13,1998, Anthony was seen by neurosurgeon Dr. K.E. Vogel for the court-ordered independent medical examination. Dr. Vogel noted Anthony's complaints of lumbosacral and bilateral leg pain. Dr. Vogel's examination revealed Anthony had a severe degree of limitation of motion in all directions with flexion limited to 10 degrees. He further indicated Anthony suffered a severe degree of muscle spasm bilaterally and severe lumbar facet tenderness bilaterally. Dr. Vogel suspected segmental lumbar instability. His report further stated that in "all medical probability, the patient's signs and symptoms are causally related to the accident of August 1996." Dr. Vogel found Anthony to be disabled for her normal duties. He recommended a lumbar facet arthrogram and a block to help in his diagnosis.
Defendant refused to provide the treatment recommended by Dr. Vogel. As stated previously, at Defendant's request, Anthony was ordered to return to Dr. Irby for re-examination. Following his examination of Anthony on December 16, 1998, Dr. Irby had an impression that Anthony had minimal L4-5 disc protrusion with no significant nerve root encroachment. He did not believe that the facet arthrogram recommended by Dr. Vogel would benefit Anthony.
Defendant argued that Anthony's medical history provided the WCJ with no reasonable basis from which to conclude Anthony was disabled. Defendant contended that Dr. Bulloch, Dr. Belchic, and Dr. Irby, each of whom examined Anthony, were unable to find any objective evidence consistent with her complaints of pain. Defendant stressed that physical therapist David Johnson found no objective findings to correlate Anthony's complaints and believed that she failed to put forth a full effort. Defendant argued the only possible explanation for the absence of objective findings to support Anthony's complaints of pain is that she was magnifying her symptoms. Defendant therefore urged this court to reverse the finding that Anthony is disabled.
*616 Initially, we observe that we generally agree with Defendant's characterization of the findings of Drs. Belchic, Bulloch, and Irby. Dr. Belchic testified that in his opinion Anthony had no orthopedic problems which would prevent her from performing any normal physical activity. Indeed, Dr. Belchic described the results of Anthony's MRI on April 15, 1998, as a "stone-cold normal report." Likewise, Dr. Irby found the results of Anthony's neurological examinations to be "pretty normal" with indications of a minimal L4-5 disc protrusion with no significant nerve root encroachment. Dr. Irby expressed no opinion on whether Anthony could return to work, deferring to Dr. Bulloch on the subject.
In Dr. Bulloch's opinion, Anthony definitely had evidence of lumbar strain, but he stated that lumbar strain would be expected to resolve within three months. He also believed that Anthony had lumbar degenerative disc disease, but that the disease was unrelated to the accident. Dr. Bulloch further testified that he was unable to detect any objective findings that would support Anthony's complaints of pain. We note, however, that Dr. Bulloch stated that Anthony "certainly" might have sustained a significant exacerbation of degenerative disc disease from the accident.
While we agree with Defendant that the testimonies of Drs. Belchic, Bulloch, and Irby would likely weigh against a finding of disability, we cannot agree that no evidence exists on which the WCJ could reasonably have found Anthony to be disabled. As stated above, lay testimony may be considered by the WCJ on the issue of disability. Fisher, supra; Taylor, supra. The record reflects that Anthony immediately reported the accident to the safety employee on the site and was given ice for bruising. She testified that she has suffered pain and discomfort since that time. Anthony's lengthy medical history indicates that, on numerous occasions, she has complained consistently of low back and left leg pain to treating and examining physicians.
Medical evidence also exists from which the WCJ could reasonably conclude Anthony is disabled. On July 16, 1997, Dr. Cox found Anthony unable to return to work. As noted above, Dr. Bulloch testified that Anthony "certainly" might have sustained a significant exacerbation of degenerative disc disease from the accident. Dr. Vogel, in his examination of October 13, 1998, found positive neurological findings in the lumbrosacral region. As detailed above, he found a severe degree of limitation of motion in all directions with flexion limited to 10 degrees. Dr. Vogel further indicated Anthony suffered a severe degree of muscle spasm bilaterally and severe lumbar facet tenderness bilaterally. In Dr. Vogel's opinion, the mild bulge of the L4-5 disc was unlikely to be the source of Anthony's pain. He had the impression of suspected segmental lumbar instability and found Anthony to be disabled for her normal duties. Dr. Vogel further stated that Anthony had reached maximum medical improvement from conservative care. He recommended a lumbar facet arthrogram and block to aid in further diagnosis, but Defendant refused to authorize these procedures.
Essentially, Defendant asked this court to re-weigh the evidence before the WCJ, giving greater weight to the testimonies of Drs. Bulloch, Belchic and Irby, and less weight to the testimony of Anthony and the opinion of Dr. Vogel. Generally, the weighing of evidence is not the function of this court and we decline to substitute our view for that of the finder of fact. Rather, our inquiry is whether the finding of the WCJ was reasonable. Stobart, supra; Graham, supra.
In light of Anthony's testimony and Dr. Vogel's opinion, the WCJ's conclusion that Anthony is disabled is reasonable. The positive findings of a medical expert may be afforded greater weight than the negative findings as to the existence or not of a particular condition. *617 Fisher, supra; Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La. App. 2d Cir.1987). The WCJ is afforded considerable discretion in evaluating expert testimony, and her decision to accept the testimony of one expert over the conflicting testimony of another can virtually never be manifestly erroneous. Fisher, supra. As previously stated, if the WCJ's findings are reasonable in light of the entire record, we may not reverse, even if convinced that had we been sitting as the trier of fact we would have weighed the evidence differently. Banks, supra; Odom, supra. Giving due deference to the WCJ's discretion, we do not find her conclusion that Anthony was disabled to be manifestly erroneous. This assignment of error is without merit.

Causation
In the alternative, Defendant urged that Anthony failed to prove that her disability was caused by her work-related accident. Defendant argued that Anthony presented "not an iota" of evidence linking her disability to the accident of August 16, 1996.
As stated above, the employee bears the initial burden of establishing the causal connection between the disability and the work-related accident by a reasonable preponderance of the evidence. Taylor, supra. The claimant does not necessarily have to establish the exact cause of the disability, but she must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Taylor, supra; Stevens, supra.
The causal relationship can be established when the employee proves that before the accident she was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Quinones v. U.S. Fidelity & Guaranty Co., 93-1648 (La.1/14/94), 630 So.2d 1303; Fisher, supra. Additionally, where the employee suffers from a pre-existing medical condition, he may still prevail if he proves the accident aggravated, accelerated, or combined with the disease or infirmity to produce a disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689; Fisher, supra. Whether an employee met his burden depends upon the totality of the evidence, including lay and medical testimony. Fisher, supra.
Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the WCJ that more probably than not the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Fisher, supra. Furthermore, as with the issue of disability, medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the WCJ after weighing the evidence. Id.
Defendant argued in brief that Anthony presented no evidence linking her disability to the accident of August 16, 1996, and further argued that the findings of Drs. Belchic and Irby negate any possible finding that Anthony's disability was caused by the accident.
We disagree. The WCJ was presented with evidence that could reasonably lead to a finding of causation. No evidence was presented that Anthony suffered from similar back or leg pain before the accident. Anthony testified that her pain began immediately after the accident and such lay testimony may properly be considered. Fisher, supra. Medical evidence supporting a finding of causation was the testimony of Dr. Bulloch that Anthony "certainly" might have sustained a significant exacerbation of degenerative disc disease from the accident and Dr. Vogel's opinion that in "all medical probability the patient's *618 signs and symptoms are causally related to the accident of August 1996."
The WCJ chose to accept the opinion of Dr. Vogel and the testimony of Anthony over the opinions of the other medical professionals. As stated above, the WCJ is afforded considerable discretion in evaluating expert testimony, and her decision to accept the testimony of one expert over the conflicting testimony of another can virtually never be manifestly erroneous. Fisher, supra. We find this assignment of error to be without merit.

Penalties
Defendant argued that the WCJ used the wrong standard in deciding whether to assess a penalty and that Anthony's right to benefits was reasonably controverted.
Our supreme court has recently set forth the applicable standards regarding the award of penalties and attorney's fees in worker's compensation actions. See Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885 and Williams, supra. In Williams, the court summarized the applicable law, stating:
Since the 1995 amendment, Section 1201 now generally governs the time period for commencing payment of compensation benefits and the timeliness of payment of continued benefits, as well as the time period for paying medical benefits; Section 1201 now also authorizes the award of both penalties and attorney's fees if payment of compensation benefits is not commenced timely, if continued benefits are not paid timely, or if medical benefits are not paid timely, unless "the claim is reasonably controverted" (or the nonpayment results from conditions over which the employer and insurer have no control); and Section 1201.2 now governs the discontinuance of payment of claims due and arising under the Act, with an award of attorney's fees authorized when the discontinuance is arbitrary, capricious or without probable cause, as well as penalties only against the insurer in limited situations.
In summary, both penalties and attorney's fees are now recoverable under Section 1201 F if the employer or insurer fails to commence payments of benefits timely or to pay continued installments timely (or to pay medical benefits timely) unless the claim is reasonably controverted. However, only attorney's fees generally are now recoverable under Section 1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due.

Williams, 737 So.2d at p. 45.
The WCJ has great discretion in determining whether to allow or disallow penalties and attorney's fees and her decision will not be disturbed absent manifest error. Odom v. International Paper Co., supra; Nowlin v. Breck Construction Co., 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112.
The WCJ assessed a $2,000 penalty against Defendant for its failure to reinstate Anthony's benefits following Dr. Cox's finding her unable to work and for Defendant's failure to timely approve medical treatment on Anthony's behalf. In the Reasons for Judgment, the WCJ stated that Defendant was aware of Dr. Cox's findings and did not question his conclusion or send Anthony to another physician to refute his findings. The WCJ further stated that Defendant had stalled Anthony's medical treatment with her initial choice of neurosurgeon, Dr. Bermudez, and that Defendant did not send Anthony back to its choice of neurosurgeon, Dr. Irby, until after the findings of Dr. Vogel. Finding the penalty warranted, the WCJ stated Defendant's actions in the handling of this case were "clearly and unequivocally arbitrary and capricious."
The WCJ did not state under which statute she was awarding the penalty, but indicated the penalty was being awarded for both the discontinuance of benefits and the failure to approve medical treatment.

*619 Discontinuance of Benefits

As Williams indicated, the discontinuance of benefits is governed by La. R.S. 23:1201.2. Williams, supra. As noted by the Williams court, Section 1201.2 authorizes only the award of attorney's fees, with no provision for the award of penalties against a self-insured employer. Defendant's discontinuance of benefits, therefore, cannot be the grounds for an imposition of a penalty.

Failure to Approve Medical Treatment
The failure to timely approve medical treatment is governed by La. R.S. 23:1201. Gay v. Georgia Pacific Corporation, 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101; Nowlin, supra. As explained by the Williams court, Section 23:1201 authorizes an award of penalties and attorney's fees if medical benefits are not paid timely, unless "the claim is reasonably controverted" or the nonpayment results from conditions over which the employer and insurer have no control. La. R.S. 23:1201. Williams, supra.
In discussing the meaning of the phrase "reasonably controverted," the Brown court stated:
... In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

Brown, 721 So.2d at p. 890.
We find the information possessed by Defendant, through the reports furnished by Drs. Belchic, Bulloch, and Irby, did provide a valid reason upon which to base the denial of medical treatment. After their examinations of Anthony, these medical professionals had been unable to associate Anthony's complaints of pain with objective findings and to link her condition with the accident. Defendant might reasonably have expected this medical information to counter that presented by Anthony throughout the time Defendant refused to approve the desired medical treatment. Additionally, the record does not support the conclusion that Defendant purposely delayed Anthony's medical treatment with Dr. Bermudez. The evidence indicates that, after initial scheduling delays, Dr. Bermudez ultimately refused to see Anthony. Defendant should not be penalized for this delay or for contesting the close factual issues of disability and causation. The WCJ erred in ordering the penalty.

DECREE
We amend the judgment to delete the award of penalties. In all other respects, we affirm the judgment of the WCJ. Costs are assessed to BE & K Construction.
AMENDED, AND AS AMENDED, AFFIRMED.
KOSTELKA, J., dissents with written reasons.
KOSTELKA, J., dissenting.
Two board certified orthopedic doctors and a board certified neurosurgeon conducted exhaustive diagnostic testing of claimant and found no job-related disability. Moreover, claimant's credibility is doubtful in view of her less-than-honest performance on her Functional Capacity Evaluation. Proof by a preponderance of the evidence requires more than merely having some evidence of disability, particularly when the medical testimony relied *620 upon is over two years post-accident. As a matter of law, the Workers' Compensation Judge erred in finding that claimant had borne her burden of proof. I respectfully dissent.
NOTES
[1] On this date, the parties stipulated to a compensation rate of $325. This amount was later determined to be incorrect by the WCJ, who held that Anthony's compensation rate was $162.50. Anthony does not appeal the ruling regarding the amount of her compensation.
[2] This testimony was later incorporated into the trial record.